**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO: 1:24-6030-JFA |
| AP CONSTRUCTION & DRYWALL, LLC a South Carolina Limited liability company; JDC CONSTRUCTION MANAGEMENT, LLC d/b/a COOPER HOME & STABLE, a South Carolina limited liability company; and HEATHER HAASE, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY, ("Atain"), files this Complaint for Declaratory Judgment against the Defendants, AP CONSTRUCTION & DRYWALL, LLC ("AP Construction"), JDC CONSTRUCTION MANAGEMENT, LLC d/b/a COOPER HOME & STABLE ("JDC"), and HEATHER HAASE ("Haase") and in support, states:

## NATURE OF ACTION

1.     This is an action for declaratory relief under 28 U.S.C. § 2201 (2024) and FED. R. CIV. P. 57 (2024) to establish the absence of coverage under two Commercial General Liability ("CGL") insurance policies issued to AP Construction, for a lawsuit filed

against AP Construction by Haase and a cross-claim filed by JDC, and arising out of alleged construction defects lawsuit brought by Haase (the "Haase Lawsuit").

## JURISDICTION AND VENUE

2. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in this district because the events giving rise to the claim occurred here. 28 U.S.C. § 1391(a)(2) (2024). More specifically, this is the district where the underlying action is venued, and where the insured risk lies. At least one of the Defendants is domiciled in this district.

4. All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5. The Plaintiff, Atain, is a Michigan corporation with its principal place of business in Michigan. Atain is a surplus lines insurance company under S.C. Code § 38-45-10, *et seq.* and issued two Commercial General Liability ("CGL") Policies to AP Construction.

6. The Defendant, AP Construction is a South Carolina limited liability company with its principal place of business in Warrenville, South Carolina. AP Construction's sole member, Aurelio Perez, is a citizen of South Carolina, and no members of AP Construction are citizens of Michigan. AP Construction was originally named as a third-party defendant in the Haase Lawsuit by JDC, but was subsequently joined as a direct defendant by the Haase and as a cross-claim defendant of JDC, which

was filed in the Second Judicial Circuit, South Carolina. AP Construction is the sole named insured on the Policies issued by Atain.

7.    The Defendant, JDC is a South Carolina limited liability company with its principal place of business in South Carolina. JDC's members are citizens of South Carolina, and none of JDC's members are citizens of Michigan. JDC was a general contractor on the Haase Project and initially filed a third-party complaint against AP Construction in the Haase Lawsuit, which subsequently became a cross-claim once the Haase made direct claims against AP Construction.

8.    The Defendant, Haase, is a citizen of South Carolina, who owned the subject property on which JDC and AP Construction are alleged to have provided construction services. Haase initially filed suit against JDC and others, alleging that the defendants negligently designed, developed or constructed her property. Haase subsequently asserted direct claims against AP Construction, which are currently pending in the Second Judicial Circuit, South Carolina.

## COMMON ALLEGATIONS

9.    *THE HAASE LAWSUIT*: Haase initially filed a lawsuit in the Aiken County Court of Common Pleas, Case No. 2021-CP-02-00972, against JDC and others due to alleged defects in the construction of her property (the "Project"). Haase subsequently amended the Haase Lawsuit to name AP Construction as a defendant. Haase's current operative pleading is her second amended complaint, a copy of which is attached as Exhibit "A" and is hereinafter referred to as the "Haase Complaint" or "Haase Lawsuit."

- 3 -

10. Haase alleges she purchased Lot # 42 in Phase 5B of Three Runs Plantation located in Aiken, South Carolina ("Subject Property"). (Ex. A, ¶ 16).

11. Haase alleges that when she purchased the Subject Property, she sought to have constructed a project that included a home, barn and facilities appropriate to living on the property with her horses and other pets ("the Project"). (Ex. A, ¶ 18).

12. Haase alleges she signed a Construction Agreement with JDC on June 16, 2017 for the construction of a cottage on the Subject Property. (Ex. A, ¶ 19).

13. Haase also alleges she signed a Construction Agreement with JDC on June 16, 2017 for the construction of a barn on the Subject Property. (Ex. A, ¶ 20).

14. Haase alleges that throughout construction of her cottage and barn and preparation for same, Haase informed JDC and other defendants of issues of concern with respect to the Project on the subject property whenever they might arise. (Ex. A, ¶ 24).

15. Haase alleges that based on assurances by Defendants, Haase believed the concerns she raised regarding the Project had been addressed. Haase believed that her issues had been fully addressed when the Subject Property was turned over to her. (Ex. A, ¶ 25).

16. Haase alleges that after construction of the project on the Subject Property was completed and turned over, latent construction defects were discovered. (Ex. A, ¶ 26).

17. Haase alleges that over time, she started to notice additional, very significant, problems related to the construction of her house and barn; the preparation

of the site for the house and barn was particularly alarming; and the installation of fences and other facilities that comprise the project were not as agreed. (Ex. A, ¶ 27).

18.     Haase alleges that on March 17, 2021, Written Notice of Claim pursuant to S.C. Code Ann Section 40-59¬840(A) was sent via certified mail to Defendants, all of whom participated in construction of the project on the Subject Property detailing the discovered defects. (Ex. A, ¶ 28).

19.     Haase alleges that to date, no Defendant has remedied or settled with Haase. (Ex. A, ¶ 33).

20.     Haase alleges that the Project, which is her home and personal horse farm, was not done in a professional manner. It does not function as intended, and restoring the property to its original condition plus the promised Project improvements will cost hundreds of thousands of dollars. (Ex. A, ¶ 36).

21.     Haase alleges that on information and belief, various components of the Project on the Subject Property are not in compliance with the building codes and standards which were applicable at the time of the construction of the project and must be repaired or replaced or modified to comply with building codes and standards. (Ex. A, ¶ 48).

22.     Haase alleges that because of the defective work, inappropriate work, omissions, and other inappropriate activities of Defendants on the property, Haase is unable to make reasonable use of her property. (Ex. A, ¶ 49).

23.    Haase alleges that the Subject Property is unsuitable for her horses, and ownership of the horses is one of the main reasons she contracted to have the Project constructed. (Ex. A, ¶ 50).

24.    Haase alleges that the property is not serviceable, and the Subject Property is unsaleable at a reasonable price due to the combined actions of Defendants. (Ex. A, ¶ 55).

25.    Haase allege that as a direct and proximate result of construction defects, including latent defects, she has suffered and will continue to suffer significant damages, including but not limited to, water intrusion and resultant property damage, damage to trees from flooding, costs necessary to repair or replace the defective conditions and damaged property, loss of value of her property, loss of use of her property, loss of aesthetic value of her property, loss of use of personal resources, personal anguish and inconvenience, loss of use of her property, and periodic displacement of her animals, additional maintenance expenses, and other actual and consequential damages. (Ex. A, ¶ 61).

26.    Haase also alleges that the behavior of certain Defendants was so reckless as to constitute gross negligence meriting punitive damages. (Ex. A, ¶ 62).

27.    Count I of the Haase Complaint alleges breach of contract against JDC. (Ex. A, ¶¶ 65-71).

28.    With respect to claims asserted against AP Construction, whom Haase identifies as one of the Subcontractor Defendants, Haase seeks Negligence, Gross Negligence and Recklessness (Count III). (Ex. A, ¶¶ 80-101).

29.     Haase alleges that the Subcontractors either by their own employees or through the use of other subcontractors, assisted JDC Construction in working on developing and preparing the project on the Subject Property. (Ex. A, ¶ 92).

30.     Haase alleges that the Subcontractors owed Haase at least the same duties of care, skill, and diligence that a reasonably prudent contractor and subcontractor would provide by conforming to the generally recognized practices of its trade or profession. (Ex. A, ¶ 93).

31.     Haase alleges that the Subcontractors' negligence includes, but is not limited to: a) failing to ensure that the project was constructed properly; b) failing to ensure that the project was constructed in a professional and workmanlike manner; b) failing to construct the project in accordance with all applicable codes and regulations and all manufacturer's specifications; d) failing to properly construct the project in a professional manner, such that the project, when constructed would be of suitable quality and fit for Haase's intended use; e) failing to construct the project in accordance with the plans and specifications; f) failing to reject deficient or non-conforming work; g) failing to properly inspect the project during and after construction for conformance with all codes, regulations, plans and specifications; h) failing to require correct or remediation of defective or non-conforming work; i) failing to perform remedial and corrective work in a proper and workmanlike manner; j) failing to fulfill the other obligations that would be required of a reasonably prudent construction manager or contractor in JDC's position; and k) converting dirt/fill to its own purposes. (Ex. A, ¶ 95).

32.    Haase alleges that JDC and the Subcontractors breached their respective duties to Haase through their acts or omissions in failing to properly prepare the site or otherwise fulfill their duties in constructing the barn. (Ex. A, 96).

33.    Haase alleges that JDC's and the Subcontractors' failures were the direct, foreseeable and proximate cause of damages to Haase. (Ex. A, ¶ 99).

34.    In Count IV, Haase seeks damages from JDC and AP Construction for Breach of Express or Implied Warranties. (Ex. A, ¶¶ 102-111).

35.    In Count V, Haase seeks damages against JDC and AP Construction for Unjust Enrichment. (Ex. A, ¶¶ 112-117). Specifically, Haase alleges that benefit was conferred by Haase upon the Defendants as she paid to have the project work done by them properly and as agreed. Defendants realized that benefit by receiving the payment, and in the case of one or more of them, they received extra benefit by removing dirt or fill without permission. Retention of the benefits by the Defendants under the circumstances described herein make it inequitable for Defendants to retain the value. (Ex. A, ¶¶ 113-116).

36.    In Count VI, Haase seeks damages for Conversion. (Ex. A, ¶¶ 118-122). Specifically, Haase alleges that one or more of the Defendants, without authorization, asserted and exercised the right of ownership over the dirt or fill belonging to Haase and removed or facilitated the removal of the dirt or fill material from the Subject Property, thereby converting the dirt or fill material. Haase further alleges that any defendant not actually removing the dirt or fill is likely to have been aware and complicit in the removal due to the proximity of work and the conversion. (Ex. A, ¶¶ 120-121).

37.     In Count VII, Haase seeks damages for promissory estoppel. (Ex. A, ¶¶ 123-129). Specifically, Haase alleges upon her request that the Defendants correct deficient and non-conforming work, Defendants unambiguously promised to stand behind their work and perform remedial and corrective work, as necessary. Haase alleges she relied on the Defendants' promises to stand behind their work and perform remedial and corrective work. (Ex. A, ¶ 125-126).

38.     Haase further alleges that through written and oral communications, including visits to the Subject Property, Defendants understood that Haase was relying on their promises to perform appropriate and remedial corrective work. Haase alleges that as a result of her reliance on the Defendants' promises and their failure to fulfill those promises, Haase has suffered and will continue to suffer damages. (Ex. A, ¶¶ 127-128).

39.     In Count VIII, Haase seeks damages for Violation of South Carolina's Unfair And Deceptive Trade Practices Act. (Ex. A, ¶¶ 130-133). Haase specifically alleges Defendants engaged in practices that are offensive to public policy or immoral, unethical or oppressive, and that they were intended to deceive and had the capacity, effect or tendency to deceive, in violation of South Carolina's Unfair Trade Practice Act S.C. Code §39-5-10 *et seq.* (Ex. A, ¶¶ 131-132).

40.     ***JDC'S THIRD-PARTY CLAIM/CROSS-CLAIM:*** In response to the Haase Complaint, JDC filed a third-party complaint against AP Construction and others. With the joinder of AP Construction as a Defendant by the Haase, JDC's third-party claim became a cross-claim. The current operative pleading by JDC against AP Construction is attached as Exhibit "B."

41.     JDC alleges it acted as the contractor for the subject cottage and barn. (Ex. B, ¶ 97).

42.     JDC alleges that AP Construction and others, referred to collectively as "Subcontractors", served as subcontractors for the construction of the subject cottage and barn. (Ex. B, ¶ 98).

43.     JDC alleges that a special relationship existed between JDC and Subcontractors such that JDC is entitled to indemnity from Subcontractors. (Ex. B, ¶ 100).

44.     JDC alleges that pursuant to agreements between JDC and Subcontractors, the Subcontractors agreed to perform work on the Project. (Ex. B, ¶ 101).

45.     JDC alleges that the Subcontractors owed a duty to JDC to perform their work in accordance with the plans, specifications, industry standards, applicable building codes, and manufacturer's installation instructions. (Ex. B, ¶ 102).

46.     JDC alleges that Haase has alleged defects in the construction of the subject property. (Ex. B, ¶ 103).

47.     JDC alleges that based on Haase's allegations, any deficiencies or defects related to the construction of the Subject Property were caused by Subcontractors and, therefore, Subcontractors breached duties of care through their acts or omissions that actually and proximately resulted in damage not only to Haase but also to JDC. (Ex. B, ¶ 104).

48.     JDC alleges that as a result, it has incurred actual, consequential, and special damages and, therefore, JDC is entitled to equitable indemnification as a result of the acts, errors, and omissions of Subcontractors. (Ex. B, ¶ 105).

49.    *AP CONSTRUCTION'S SCOPE OF WORK:* On information and belief, AP Construction entered into a subcontract with JDC to perform the following work on the Project: (a) installation of roof flashings and shingles for the cottage and barn; and (b) installation of drywall in the cottage.

50.    AP Construction submitted to JDC invoice no. 00151, dated June 18, 2017 for the sum of $2,700 and identified its work as labor for installation of roof shingles on the cottage house, installing synthetic felt, metal flashing, boot flashing pipe, and drip edge.

51.    AP Construction also submitted to JDC invoice no. 00152, dated June 18, 2017 in the amount of $5,800 and identified its work as labor to hang and finish drywall in the cottage house, hanged and finished 180 ½" sheets of drywall, providing mud, tape, corner beat, screws, and durabond.

52.    AP Construction also submitted to JDC invoice no. 00153, dated June 17, 2017 in the amount of $2,300 and identified its work as installing roof shingles on the barn, installing synthetic felt, flashing, drip edge and ridge vent.

53.    AP Construction also submitted to JDC invoice no. 0125, dated August 8, 2018 in the amount of $11,680 and identified its work as put hardie b around the house, put soffit and fascia, put hardie panel on the house, plus $300 for put blocks in between the ceiling porch.

54.    *THE POLICIES*:    Atain issued two successive CGL policies to AP Construction as the sole named insured: Policy No. CIP306237, effective November 14, 2016 through November 14, 2017 (the "2016-17 Policy"), and Policy No. CIP335272,

- 11 -

effective November 14, 2017 through November 14, 2018 (the "2017-18 Policy") (collectively, the "Policies"). True and correct copies of the 2016-17 Policy and the 2017-18 Policy are attached as Exhibits "C" and "D," respectively. The Policies provide CGL coverage subject to their terms, with limits of $500,000 per occurrence and $1,000,000 aggregate limits, subject to a $500 per claim deductible.

55.    The Policies' Declarations list AP's business description as "Drywall Installation." The only trade-related classification in the Classification Description of the Policies' Supplemental Declarations is "Drywall – Wallboard Installation." (Ex. C, D, Declarations and Supp. Declarations).

56.    The Policies' main insuring agreement is provided in Form CG 00 01 04 13, which provides, in pertinent part as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period . . .

**2.     Exclusions**

This insurance does not apply to …

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. …

**j.     Damage to Property**

"Property damage" to …

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. …

**k.     Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.     Damage to Your Work**

"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use. …

**n.    Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";
(2)    "Your work"; or
(3)    "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. …

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
…

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

- 14 -

      (1)    How, when and where the "occurrence" or offense took place;

      (2)    The names and addresses of any injured persons and witnesses; and

      (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

      (1)    Immediately record the specifics of the claim or "suit" and the date received; and

      (2)    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

      (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2)    Authorize us to obtain records and other information;

      (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. …

**SECTION V-DEFINITIONS** …

**8.**    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.     You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement. …

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"…

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

**21.**    "Your product" means:

    **a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have acquired . . .

**22.**    "Your work" means:

    **a.**    Means:

        (1)    Work or operations performed by you or on your behalf; and

(2)    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2)    The providing of or failure to provide warnings or instructions. …

(Ex. C-D, Form No. CG 00 01 04 13).

57.    The Policies also include Form No. AF 33510 07/2012, titled "Classification Limitation" ("Classification Limitation Endorsement"), which provides in pertinent part:

Coverage under this policy is specifically limited to, and applies only to those classifications as described under the applicable Coverage Part or Schedule designated in the Declarations Page of this policy.

This policy excludes coverage for any operation not specifically listed in the Coverage Part, Schedule or Declarations Page of this policy. …

(Ex. C-D, Form No. Form No. AF 33510 07/2012).

58.    The Policy also includes Form No. CG 2167 12 04, titled, "Fungi or Bacteria Exclusion," which provides, in relevant part:

**A**.    The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

**2.    Exclusions**

This insurance does not apply to:

Fungi Or Bacteria

- 17 -

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption. …

C. The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. …

(Ex. C-D, Form No. CG 2167 12 04).

59. The Policies include Form No. AF3397 07/2012, titled, ""Exterior Insulation And Finish System (EIFS) Or Drywall Emission Exclusion," which provides, in pertinent part:

**Exterior Insulation And Finish System (EFIS) Or Drywall Emissions**

This insurance does not apply to any "bodily injury" "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or

repair, including remodeling, service, correction or replacement of any "exterior insulation and finish system" or emissions that would emit from any drywall or any part thereof or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealants in connection with such a system or drywall;

2.    Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" or drywall is used on any part of that structure …

This exclusion applies to "work" or "your work" as described in the above Paragraphs 1. or 2. that is performed by you or on your behalf. …

(Ex. C-D, Form No. AF3397 07/2012).

60.    Atain agreed to defend AP Construction for the Haase Lawsuit and JDC's third-party claim/cross-claim, under a reservation of rights. Atain now seeks declaratory judgment as to whether it has any obligation to defend or indemnify AP Construction in the Haase Lawsuit, including JDC's cross-claims.

## COUNT I – NO COVERAGE CLASSIFICATION LIMITATION ENDORSEMENT

61.    Atain incorporates paragraphs 1-60 as paragraph 61 of Count I.

62.    The Haase Lawsuit alleges alleged defects in the construction of her cottage and barn by AP Construction, among others.

63.    AP Construction's scope of work included work on roofing flashings and shingles and related component parts, and hardie siding.

64.    AP Construction's business description in the Policies is limited to "Drywall Installation." Additionally, the Classification Description for AP Construction's work is limited to "Drywall -Wallboard Installation."

65.    Under the Policies' Classification Limitation, there is no coverage for the alleged "property damage" arising out of AP Construction's work or operations outside of the Classification Description or Business Description in the Policies.

66.    Accordingly, Atain has no obligation to defend or indemnify AP Construction for the Haase Lawsuit, including JDC's crossclaims.

<u>**COUNT II – NO PROPERTY DAMAGE**</u>

67.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 67 of Count II.

68.    There is no coverage under the Policies because the Haase Lawsuit seeks to recover the costs to repair or replace AP Construction's own work, including the removal and replacement of other property to facilitate the repair or replacement of AP Construction's work.

69.    The cost to repair or replace AP Construction's work does not constitute "property damage" under the Policies. Additionally, the costs to remove and replace other parts of the subject property to effectuate the repair or replacement of AP Construction's work does not constitute "property damage."

70.    There is no coverage for any alleged "property damage" that did not occur during any policy period.

71.    Alternatively, to the extent the Haase Lawsuit alleges any "property damage" as defined by the Policies and South Carolina law, Atain is only obligated to pay for its *pro rata* share of such damages based on its time on the risk.

72.    Accordingly, there is no coverage under the Policies, and consequently no duty to defend or indemnify AP Construction or JDC. Alternatively, to the extent there is any covered "property damage," Atain's indemnity obligations are limited by its *pro rata* time on the risk.

**COUNT III – NO COVERAGE**
**BUSINESS RISK EXCLUSIONS**

73.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 73 of Count III.

74.    There is no coverage to the extent the Haase Lawsuit seeks damages for "property damage" to any real property on which AP Construction or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

75.    There is also no coverage to the extent the Haase Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because AP Construction's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

76.    There is no coverage to the extent that the Haase Lawsuit seeks damages to AP Construction's product under Coverage Part A.2.(k) ("Your product" Exclusion).

77.    There is no coverage to the extent the Haase Lawsuit seeks damages to AP Construction's, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your work" Exclusion).

78.    There is no coverage to the extent that the Haase Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property" Exclusion).

79.    There is no coverage to the extent that the Haase Lawsuit seeks damages for any loss, cost or expense incurred by AP Construction, JDC, or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of AP Construction's or JDC's product, AP Construction's or JDC's work, or any "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

## COUNT IV – NO COVERAGE
## FUNGI OR BACTERIA EXCLUSION

80.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 80 of Count IV.

81.    To the extent the Haase seek damages due to any exposure to, development of, or growth of mold, mildew, or bacteria inside of subject property, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

82.    To the extent that the Haase seek damages due to any costs or expenses associated with the removal, repair, remediation, monitoring, or testing for mold, mildew, or bacteria, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

## COUNT V – NO COVERAGE
## EIFS AND DRYWALL EXCLUSION

83.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 83 of Count V.

84.    There is no coverage to the extent there are any claims of "property damage" arising out of, caused by, or attributable to, in whole or in part, the emissions that would emit from any drywall or any part thereof or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealants in connection with such a system or drywall; or any work or operations with respect to any exterior component, fixture or feature of any structure if drywall is used on any part of that structure.

### COUNT VI – NO COVERGE – NO OCCURRENCE

85.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 85 of Count VI.

86.    The allegations of Counts V – VIII of the Haase Lawsuit do not allege any "occurrence" as that term is used and defined in the Policies.

87.    Further, the allegations of Counts V – VIII of the Haase Lawsuit are excluded under the Policies' Expected Or Intended Injury Exclusion (Exclusion a.) of Coverage Part A.2. Exclusions.

### COUNT VII – NO COVERAGE
### INTEGRATED POLICY PROVISIONS

88.    Atain incorporates its allegations in paragraphs 1-60 as paragraph 88 of Count VIII.

89.    Atain fully incorporates by reference each and every term, condition, exclusion and endorsement contained within Exhibits C-D, including but not limited to the Policies' Notice And Cooperation Conditions.

90.     To the extent any additional term, condition, exclusion or endorsement within the Policies applies to the allegations, facts, or circumstances as discovered in this action or the Haase Lawsuit and the JDC crossclaim, Atain seeks a declaration to the extent such terms, conditions, exclusions or endorsements eliminate or reduce the available coverage for the Haase Lawsuit.

## REQUESTED RELIEF

**WHEREFORE**, Atain respectfully requests this Court:

a.     Take jurisdiction and adjudicate the rights of the parties under the Policies;

b.     Find that Atain has no obligation to defend or indemnify AP Construction for the Haase Lawsuit, including JDC's cross-claims, under the Policies;

c.     Alternatively, and only to the extent the Court finds Atain has an obligation to defend AP Construction, that it finds that Atain has no duty to indemnify AP Construction, or that Atain's duty to indemnify is limited or reduced by one or more of the Policies' terms, conditions, exclusions or endorsements; and

d.     Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

//

//

//

//

Respectfully submitted,
COOPER | TIERNEY

/s/ M. Linsay Boyce
Lindsey W. Cooper Jr. (Fed. ID No. 9909)
M. Linsay Boyce (Fed. ID No. 11952)
Dustin J. Pitts (Fed. ID No. 13511)
36 Broad Street
Charleston, SC  29401
P: 843-375-6622
F: 843-375-6623
E-mail: lwc@coopertierney.com
          linsay@coopertierney.com
          djp@coopertierney.com

*Attorneys for Atain Spec. Ins. Co.*

October 23, 2024
Charleston, South Carolina